UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LEMOYNE FRANCIS ROST and
KELLY ROST,

                    Plaintiffs,

v.

DERMOT HEANEY, in his individual
capacity and as an agent of Huron-
Clinton Metropolitan Authority, and
HURON-CLINTON METROPOLITAN
AUTHORITY,

                    Defendants.

_____/

Case No. 18-cv-13049

Paul D. Borman
United States District Judge

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (ECF NO. 14)

This case arises out of Plaintiff LeMoyne Francis Rost's arrest on August 27, 2016 by Defendant Dermot Heaney, a Huron-Clinton Metropark police officer. Plaintiffs claim that Officer Heaney used excessive force against Rost, in the course of his efforts to arrest him. Defendants respond that Rost resisted the police officer's efforts to arrest him and that Officer Heaney used only the force that was reasonable under the circumstances to subdue and arrest Rost. Now before the Court is Defendants' Motion for Summary Judgment (ECF No. 14). The motion is fully briefed. The Court held a hearing using Zoom videoconference technology on

October 16, 2020, at which counsel for Plaintiffs and Defendants appeared. For the reasons that follow, the Court GRANTS IN PART and DENIES IS PART Defendants' Motion for Summary Judgment.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

### A.    Factual Background

On August 27, 2016, Plaintiff LeMoyne Francis Rost ("Rost") was mowing his lawn with his Cub Cadet zero-turn mower at his address at 8900 Rickett Road, Brighton, Michigan, as well as a strip of land across the road from his house. (ECF No. 22-6, First Amended Complaint ("FAC") ¶ 11, PgID 1081.) Defendant Huron-Clinton Metropolitan Authority ("HCMA") Police Officer Dermot Heaney ("Officer Heaney") was driving on Rickett Road, in his fully-marked patrol car, and observed Rost using a riding mower on the HCMA's property at the Huron-Meadows location across from Rost's home and adjacent to eastbound Rickett Road. (ECF No. 14-4, Police Report, PgID 142.) Rost admits that he did not own the property he was cutting when he first interacted with Officer Heaney, but states that he had been mowing that area for approximately 12 years. (ECF No. 14-5, LeMoyne Francis Rost Deposition Tr. at pp. 53-55, 80, PgID 167, 174.) Plaintiffs and Defendants differ on their accounts of what happened next.

### 1.   Plaintiffs' version of the events leading up to his arrest

According to Plaintiffs, Rost first saw Officer Heaney when Heaney "jumped out of the bushes in front of [Rost's] mower," asked him "what [he] was doing, who [he] was and where [he] lived." (Rost Dep. at pp. 54-55, 57-58, PgID 167-68.)[1] Officer Heaney told Rost that he had "no business mowing the area," that he was destroying park property, and demanded his identification. (*Id.* at pp. 58, 78-79, PgID 167-68, 173; FAC ¶ 14, PgID 1081.) Plaintiff stopped his mower, but left it running in idle, as Officer Heaney stood two feet in front of his mower, and states that he gave Officer Heaney his name and told him (and pointed to) where he lived, and stated that he did not have identification on him but that he offered to go across the street to get it. (Rost Dep. at pp. 58, 78, PgID 168, 173; FAC ¶ 15, PgID 1081.)

Plaintiff states that Officer Heaney then immediately "leapt" or "jumped" over the front of the mower at Rost, "attack[ing]" him and "throwing him off the mower and slamming [Rost] to the gravel ground." (Rost Dep. at pp. 81-82, PgID 174; FAC ¶ 16, PgID 1081.) Rost asserts that his glasses were knocked off, crushed and destroyed, cutting his forehead, and the key to his mower was bent and twisted

---

[1] While Rost states in his verified First Amended Complaint that Officer Heaney "stalked" him "with his hand on his service pistol and jumped out at [Rost] while he was mowing," (FAC ¶ 13, PgID 1081), he testified in his deposition that Officer Heaney did not have a gun. (Rost Dep. at p. 79, PgID 173.)

due to the force used by Officer Heaney. (FAC ¶ 17, PgID 1081.) Rost landed on his head and ended up on the ground on his stomach with Officer Heaney on top of him. (Rost Dep. at pp. 82-83, PgID 174.) Officer Heaney then attempted to handcuff Rost, but Rost's left hand was trapped under his body by Officer Heaney's bodyweight. (*Id.*) Rost stated, "I'm totally complying with you," pleaded with Officer Heaney not to hurt his hands and his neck, and stated that he had just had medical treatment. (*Id.* at p. 85, PgID 175.) Rost eventually was able to free his left hand when Officer Heaney rolled off of him, and he was then handcuffed behind his back. (*Id.* at pp. 84-87, PgID 175.)

Rost complains that Officer Heaney "beat" him while he was on the ground, states that he does not know if he was punched because he "couldn't see" but "felt something" and that Officer Heaney "wasn't comforting [him]," but he admits that Officer Heaney did not punch or slap him in the face or kick or stomp on him. (Rost Dep. at pp. 87-89, PgID 175-76.) Rost contends the officer twisted his arm behind him when he was handcuffed and knelt on his hands. (*Id.*) Rost complained of neck pain and pain to his arthritic wrists during this physical interaction. (Police Report at PgID 142.)

Rost testified that Officer Heaney then pulled him up off the ground by the handcuffs and dragged him backwards across the roadway to the police vehicle,

causing him to fall and stumble, before placing him into the back of the vehicle. (Rost Dep. at pp. 89-91, 94, PgID 176-77.)

Rost's wife, Kelly, came out of their house when she heard the mower idling and saw Office Heaney on top of her husband across the street, sitting on her husband's back and with her husband's right hand behind his back. (Kelly Rost Deposition Transcript at pp. 23-25, PgID 193-94.) She did not see Officer Heaney punch or kick Rost, and she did not see the events leading to her husband being on the ground. (*Id.* at pp. 25-26, PgID 194.) She testified that Officer Heaney pulled Rost up and walked Rost across the street to his patrol car, pushing him forward, causing Rost to fall. (*Id.*) Officer Heaney asked Kelly for Rost's identification, but she refused to provide it. (*Id.* at p. 27, PgID 194.) She acknowledges that her voice was "elevated" during her verbal exchange with Officer Heaney and that she "probably did use the 'F' bomb." (*Id.* at p. 28, PgID 195.) She started to record the incident it, but Officer Heaney told her to put the camera away and go back into the house or she would be arrested. (*Id.* at p. 31, PgID 195; Rost Dep. at p. 93, PgID 177.)

### 2.    Defendants' version of the events leading up to Rost's arrest

According to Defendants, Officer Heaney first pulled to the shoulder of Rickett Road and signaled Rost via hand signals and verbally to stop his mower and

5

come over. (Police Report, PgID 142.) Rost ignored Officer Heaney's request. (*Id.*; ECF No. 14-3, Officer Dermot Patrick Heaney Deposition Tr. at pp. 28-29, 51, PgID 115, 121.) Officer Heaney then notified dispatch that he would be on foot, and he proceeded across the street toward Rost. (Heaney Dep. at pp. 28-29, PgID 115.)

When Officer Heaney approached Rost, Rost momentarily stopped the mower and Officer Heaney informed Rost that he was trespassing by cutting grass on park property and he requested Rost's identification, which Rost refused to provide. (*Id.* at pp. 51-52, PgID 121.) Rost became agitated and repeatedly stated that he could mow the park's property as he had been doing so for several years. (Police Report, PgID 142.) Officer Heaney states that Rost was agitated and yelling, and then started the mower again while Heaney was standing directly in front of it, thereby "weaponizing" it. (Heaney Dep. at pp. 52-53, PgID 121.) Officer Heaney directed Rost to shut the mower off and Rost refused. (*Id.* at pp. 52-53, 84-85, 88-89, PgID 121, 129-30.) As Officer Heaney reached for Rost's hand, Rost put the mower in reverse in an attempt to flee. (*Id.*) Officer Heaney tried to shut the machine off and Rost pushed him away. (*Id.*) At that point, Officer Heaney was able to pull the choke on the mower, turn the key off, and when Rost pushed Heaney again, Heaney pulled Rost off the mower with Rost falling face first on to the ground. Officer Heaney landed on top of Rost on the ground next to the road.  (*Id.*)

6

Officer Heaney stated that Rost kept resisting putting his both of hands behind his back, but after a brief struggle Officer Heaney was able to gain control and handcuff Rost behind his back, assist him up, and then escort him to the police vehicle across the road. (*Id*. at pp. 90-93, PgID 131.) Rost "sank to his knees" two to three times on the walk to the patrol car, and Officer Heaney testified that Rost was "just putting on a show … for the neighbors so they could come out and take pictures." (*Id.* at pp. 93-94, PgID 131-32.)

Several witnesses, including neighbors and Plaintiff Kelly Rost, allegedly observed the incident, and it appears that at least one of those neighbors recorded part of the incident. (Rost Dep. at pp. 60-62, 91-93, 100-01, PgID 169, 176-77, 179; Officer Heaney Dep. at pp. 95-97, PgID 132.) While the parties discussed viewing a video of at least part of the incident in their depositions, there is no evidence presented to the Court, such as the video or witness statements from any of these persons regarding this incident.

### 3. Rost is arrested and placed in the Livingston County jail

Officer Heaney first drove Rost to the police office at the Huron Meadows golf course. (Police Report, PgID 142; Rost Dep. at p. 67, PgID 170.) HCMA Police Officer Jim Priestly (a former defendant) met them there to provide assistance, and the Green Oak Fire Department EMS responded to evaluate Rost's injuries, although

7

Rost declined medical attention. (Heaney Dep. at pp. 76-78, 98, PgID 127-28, 133; Rost Dep. at pp. 96-98, PgID 178; Police Report at PgID 147.) Rost's handcuffs were removed when he was evaluated by EMS and then reapplied, more loosely, after that. (Rost. Dep. at p. 97, PgID 178.) Officers Heaney and Priestly then transported Rost to the Livingston County jail for processing on charges of restricting/obstructing a police officer, disorderly person, disobeying a lawful order of a police officer, unregistered vehicle on a roadway, and preservation of property and natural resources, and Rost's mower was impounded. (Police Report at PgID 143; Rost Dep. at p. 68, PgID 171; Heaney Dep. at p. 49, PgID 120.)

According to Plaintiffs, Rost was lodged at the Livingston County jail for the rest of the Labor Day weekend and was released on the following Tuesday with no charges having been authorized against him. (Pls.' Amended Resp. at p. 7, PgID 721; Rost Dep. at pp. 66, 68, PgID 170-71.) The HCMA sought various charges against Rost, and Rost was ultimately charged with "Trespass." (Pls.' Amended Resp. at pp. 7-8, PgID 721-22.) In December 2017, the Livingston County Prosecutors Office filed a Nolle Prosequi, dismissing all charges against Rost. (*Id.*)

Plaintiffs allege that Rost suffered several injuries as a result of the arrest, including broken glasses and cuts to his face and head, injuries to his hands and wrists from the handcuffs, injury to his neck, and severe and continuing

psychological injuries. (FAC ¶¶ 33-42, PgID 1083-84; Rost Dep. at pp. 104, 108-13, PgID 180-82.) Plaintiffs allege that Kelly Rost suffered injuries as a result of witnessing Officer Heaney's arrest of her husband, and has also suffered a loss of companionship, sexual relations, affection, society, moral support, and solace from her husband. (FAC ¶¶ 41-42, PgID 1083-84.)

## B.    Procedural History

On September 28, 2018, this case was removed to this Court from the Livingston County Circuit Court based on federal question jurisdiction pursuant to 28 U.S.C. § 1331. (ECF No. 1, Notice of Removal.) Plaintiffs allege seven claims against Defendants. Specifically, Plaintiffs assert claims against Officer Heaney for violation of Rost's federal constitutional rights under the Fourth and Fourteenth Amendments, as well as state claims for assault, battery, and false imprisonment. (FAC, Counts I to IV.)[2] Plaintiffs allege claims against the HCMA for violation of their constitutional rights under the Fourth and Fourteenth Amendments and for "respondeat superior," (*id.*, Counts V and VI), and Plaintiff Kelly Rost asserts a claim against all Defendants for loss of consortium (*id.*, Count VII). Specifically,

---

[2] Plaintiffs also alleged constitutional and false imprisonment claims against Officer Jim Priestly (FAC Counts I and IV), but Plaintiffs' claims against Priestly were dismissed with prejudice in a Stipulated Order on October 3, 2019. (ECF No. 13, Stipulated Order of Dismissal of Defendant, Jim Priestly, Only.)

Plaintiffs claim that Officer Heaney used excessive force when he arrested Rost and unjustly imprisoned him, that Plaintiff Kelly Rost suffered from loss of consortium as a result of the injuries to her husband caused by Officer Heaney, that the HCMA developed and maintained policies or customs exhibiting deliberate indifference to the rights of person coming into contact with the HCMA, and that the HCMA is liable for the actions of Officer Heaney. (*Id.*) Plaintiffs seek compensatory and exemplary damages as well as equitable relief, including "a permanent injunction, upon proper motion, requiring Defendant [HCMA] to adopt appropriate policies related to the hiring and supervision of its police officers[.]" (*Id.* PgID 15.)

On November 12, 2019, Defendants filed their motion for summary judgment, arguing that all of Plaintiffs' claims fail as a matter of law. (ECF No. 14, Defendants' Motion for Summary Judgment.) Defendants argue that Plaintiffs' Fourth Amendment claims against Officer Heaney fail because the evidence shows that Officer Heaney's actions toward Rost were objectively reasonable, and that Plaintiffs' claims against Heaney are barred by the doctrine of qualified immunity. (*Id.* at pp. 5-9, PgID 91-95.) Defendants assert that Plaintiff Kelly Rost's loss of consortium claim fails because no such cause of action lies under 42 U.S.C. § 1983. (*Id.* at p. 10, PgID 96.) Defendants also assert that Plaintiffs' *Monell* claim against the HCMA fails because a municipality cannot be held liable under § 1983 on a

10

respondeat superior theory, and Plaintiffs have failed to identify any unconstitutional customs, policies or procedures that the HCMA maintained. (*Id.* at pp. 10-12, PgID 96-98.) Defendants further argue that Plaintiffs' assault and battery claims fail because Officer Heaney's use of force was reasonable, the false arrest/imprisonment claim fails because Officer Heaney had ample probable cause to arrest Rost for trespassing and/or resisting a lawful arrest, and Officer Heaney is entitled to governmental immunity from Plaintiffs' assault and battery claims. (*Id.* at pp. 12-17, PgID 100-03.)

Plaintiffs initially responded to Defendants' motion on December 12, 2019. (ECF No. 17.) The Court struck that Response for failure to support the brief with specific citations to the record evidence in violation of the Federal Rules and this Court's Practice Guidelines (ECF No. 21), and Plaintiffs filed an Amended Response on August 18, 2020. (ECF No. 22, Plaintiffs' Amended Response.) Plaintiffs argue that the evidence shows that Officer Heaney used more force than was necessary in light of the circumstances, and that he is not entitled to qualified immunity. (*Id.* at pp. 11-14, PgID 726-28.) Plaintiffs also assert that Kelly Rost has stated a viable loss of consortium claim, and that Defendant HCMA has developed and maintained policies or customs exhibiting deliberate indifference to the constitutional rights of persons coming into contact with the HCMA. (*Id.* at pp. 14-

17, PgID 728-31.) Plaintiffs dispute that Officer Heaney's actions toward Rost were objectively reasonable and thus his assault and battery claims survive, assert that Rost has a viable false arrest/false imprisonment claim because Officer Heaney lacked probable cause to arrest him, and dispute that Officer Heaney is entitled to governmental immunity for Plaintiffs' assault and battery claims. (*Id.* at pp. 17-20, PgID 731-34.)

Defendants filed a reply brief on December 26, 2019, arguing that Plaintiffs' Fourth Amendment claims fail, and that Officer Heaney is entitled to qualified immunity. (ECF No. 19, Defendants' Reply at pp. 1-2, PgID 697-98.) Defendants contend that Plaintiffs' response fails to identify one improper HCMA policy, or lack thereof and erroneously concludes that the HCMA is liable for Officer Heaney under *respondeat superior.* (*Id.* at pp. 2-3, PgID 698-99.) Finally, Kelly Rost's loss of consortium and Plaintiffs' state law claims fail as a matter of law for the reasons set forth in their motion.  (*Id.* at pp. 3-4, PgID 699-700.)

## II.    LEGAL STANDARD

Summary judgment is appropriate where the moving party demonstrates that there is no genuine dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(a). "A fact is 'material' for purposes of a motion for summary judgment where proof of that fact 'would have [the] effect of

establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties.'" *Dekarske v. Fed. Exp. Corp.*, 294 F.R.D. 68, 77 (E.D. Mich. 2013) (quoting *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984)). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

"In deciding a motion for summary judgment, the court must draw all reasonable inferences in favor of the nonmoving party." *Perry v. Jaguar of Troy*, 353 F.3d 510, 513 (6th Cir. 2003) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  At the same time, the non-movant must produce enough evidence to allow a reasonable jury to find in his or her favor by a preponderance of the evidence, *Anderson*, 477 U.S. at 252, and "[t]he 'mere possibility' of a factual dispute does not suffice to create a triable case." *Combs v. Int'l Ins. Co.*, 354 F.3d 568, 576 (6th Cir. 2004) (quoting *Gregg v. Allen–Bradley Co.*, 801 F.2d 859, 863 (6th Cir. 1986)). Instead, "the non-moving party must be able to show sufficient probative evidence [that] would permit a finding in [his] favor on more than mere speculation, conjecture, or fantasy." *Arendale v. City of Memphis*, 519 F.3d 587, 601 (6th Cir. 2008) (quoting *Lewis v. Philip Morris Inc.*, 355 F.3d 515, 533 (6th Cir. 2004)). "The test is whether the party bearing the burden of proof

13

has presented a jury question as to each element in the case. The plaintiff must present more than a mere scintilla of the evidence. To support his or her position, he or she must present evidence on which the trier of fact could find for the plaintiff." *Davis v. McCourt*, 226 F.3d 506, 511 (6th Cir. 2000) (internal quotation marks and citations omitted). "'The central issue is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Binay v. Bettendorf*, 601 F.3d 640, 646 (6th Cir. 2010) (quoting *In re Calumet Farm, Inc.*, 398 F.3d 555, 558 (6th Cir. 2005)). That evidence must be capable of presentation in a form that would be admissible at trial. *See Alexander v. CareSource*, 576 F.3d 551, 558–59 (6th Cir. 2009).

## III.   ANALYSIS

### A.   Plaintiffs' Fourth Amendment Claim of Excessive Force Against Officer Heaney (Count I)

Plaintiffs allege that Officer Heaney violated Rost's Fourth and Fourteenth Amendment constitutional rights when he used excessive force to jump on Rost and tackle him from the mower to the ground, beat him, handcuff him too tightly, and arrest him. (FAC ¶¶ 16, 18, 44-45, PgID 1081, 1084; Rost Dep. at p. 95, PgID 177.) Defendants argue that Plaintiffs cannot establish a Fourth Amendment violation, and that Plaintiffs' claim is barred by the doctrine of qualified immunity. (Defs.' Mot. at pp. 5-9, PgID 91-95.)

"To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). There is a long-standing principle that government officials are immune from civil liability under 42 U.S.C. § 1983 when performing discretionary duties so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Burgess v. Fischer*, 735 F.3d 462, 472 (6th Cir. 2013) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "In determining whether the government officials in this case are entitled to qualified immunity, we ask two questions: First, viewing the facts in the light most favorable to the plaintiff, has the plaintiff [ ] shown that a constitutional violation has occurred? Second, was the right clearly established at the time of the violation?" *Phillips v. Roane Cnty., Tenn.*, 534 F.3d 531, 538-39 (6th Cir. 2008) (alteration added). "The court may address these prongs in any order, and if the plaintiff cannot make both showings, the officer is entitled to qualified immunity." *Brown v. Lewis*, 779 F.3d 401, 412 (6th Cir. 2015) (citing *Pearson v. Callahan*, 555 U.S. 223 (2009)). "But under either prong, courts may not resolve genuine disputes of fact in favor of the party seeking summary judgment." *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (citations omitted).

15

Once raised, the plaintiff bears the burden of showing that a defendant is not entitled to qualified immunity. *Ciminillo v. Streicher*, 434 F.3d 461, 466 (6th Cir. 2006).

Plaintiffs claim that Officer Heaney violated Rost's Fourth Amendment rights "when he forcefully sneak attacked Plaintiff, and used excessive force, beating the Plaintiff to the ground." (Pls.' Amended Resp. at p. 12, PgID 726, citing FAC ¶¶ 16, 18, and ECF No. 22-6, Defendants' Revised Answer, ¶¶ 16, 18.) Plaintiffs assert that Officer Heaney "used more force than was necessary in light of the circumstances." (*Id.* citing Rost Dep. at pp. 69-70, 81-87, 95, 99, 104, 108, 111-13, PgID 171, 174-75, 177-78, 180-82; Heaney Dep. at pp. 51-53, PgID 121.) Claims regarding an officer's use of excessive force in the context of an arrest or other seizure are governed by the Fourth Amendment: "Where, as here, the excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment." *Graham v. Connor*, 490 U.S. 386, 394 (1989); *see also Shreve v. Franklin Cnty., Ohio*, 743 F.3d 126, 133 (6th Cir. 2014) (reaffirming that a claim asserting the use of force in the course of an arrest "arises under the Fourth Amendment and its reasonableness standard."); *Malory v. Whiting*, 489 F. App'x 78, 82 (6th Cir. 2012) ("The Fourth Amendment of the United States Constitution protects a person from being subject to excessive physical force during the course of

16

an arrest, a booking, or other police seizure.") (citing *Drogosch v. Metcalf*, 557 F.3d 372, 378 (6th Cir. 2009)). The protections of the Fourth Amendment extend "'at least through the completion of the booking procedure, which is typically handled by jailers.'" *Burgess*, 735 F.3d at 474 (quoting *Aldini v. Johnson*, 609 F.3d 858, 865-66 (6th Cir. 2010)).

The determination as to whether the officer has exerted excessive force during the course of seizure is determined under an "objective reasonableness" standard. *Graham*, 490 U.S. at 396-97. "The 'reasonableness' inquiry in an excessive force case is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397. The Court analyzes the challenged conduct from the "perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 396. The Sixth Circuit has summarized the analytical framework applied in an excessive force case:

> Under the Fourth Amendment, we apply an objective reasonableness test, looking to the reasonableness of the force in light of the totality of the circumstances confronting the defendants, and not to the underlying intent or motivation of the defendants. *Dunigan v. Noble*, 390 F.3d 486, 493 (6th Cir. 2004); *see also Graham*, 490 U.S. at 396–97, 109 S. Ct. 1865. We balance "the nature and quality of the intrusion on [a plaintiff's] Fourth Amendment interests against the countervailing governmental interests at stake." *Ciminillo v. Streicher*, 434 F.3d 461, 466–67 (6th Cir. 2006). In doing so, three factors guide our analysis: "'[(1)] the severity of the crime at issue, [ (2) ] whether the suspect poses

17

an immediate threat to the safety of the officers or others, and [(3)] whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Martin v. City of Broadview Heights*, 712 F.3d 951, 958 (6th Cir. 2013) (*quoting Graham*, 490 U.S. at 396, 109 S. Ct. 1865). These factors are assessed from the perspective of a reasonable officer on the scene making a split-second judgment under tense, uncertain, and rapidly evolving circumstances without the advantage of 20/20 hindsight. *Graham*, 490 U.S. at 396–97, 109 S. Ct. 1865.

*Burgess*, 735 F.3d at 472-73(alterations in original).

The reasonableness inquiry necessarily entails balancing individual rights with governmental interests:

Determining whether the force used to effect a particular seizure is reasonable under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake. Our Fourth Amendment jurisprudence has long recognized that the right to make an arrest or an investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it. ... Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment. The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation.

*Graham*, 490 U.S. at 396-97 (internal quotation marks and citations omitted). "At the summary judgment stage, … once we have determined the relevant set of facts *and drawn all inferences in favor of the nonmoving party to the extent supportable by the record*, … the reasonableness of [the defendants'] actions … is a pure question

18

of law." *Scott v. Harris*, 550 U.S. 372, 381 n.8 (2007) (emphasis added); *Chappell v. City of Cleveland*, 585 F.3d 901, 909 (6th Cir. 2009). "[T]he ultimate question is whether the totality of the circumstances justifies a particular sort of seizure." *Ciminillo v. Streicher*, 434 F.3d 461, 467 (6th Cir. 2006) (citation and internal quotation marks omitted). "This standard contains a built-in measure of deference to the officer's on-the-spot judgment about the level of force necessary in light of the circumstances of the particular case." *Id.* (citation and internal quotation marks omitted).

### 1.      Whether a constitutional violation occurred

Turning to the facts of this case, Defendants contend in their motion that Officer Heaney's actions were "objectively reasonable," and thus his use of force was not excessive, because Rost was "obstinate and hostile" to Heaney, consistently refused to adhere to Officer Heaney's lawful commands, and kept the mower on, pointed at Officer Heaney, during the increasingly tense interaction. (Defs.' Mot. at pp. 5, 8-9, PgID 91, 94-95.) Defendants further contend that it is undisputed that Officer Heaney did not punch, kick or stomp Rost during the altercation. (Defs.' Mot. at p. 9, PgID 95.) Plaintiffs respond that Rost's actions – mowing grass – did not warrant the excessive physical force used by Officer Heaney in tackling him off the mower and that the officer used more force in the course of the arrest than was

necessary in light of the circumstances. (Pls.' Amended Resp. at pp. 12-14, PgID 726-28.) Rost agreed in his deposition that "the extent of the excessive force" he alleges "is at the scene when [Officer Heaney] jumped on [Rost] on the lawnmower, [Rost] flipped off. [Officer Heaney] was on top of [Rost]" and Rost "claim[s] he was beating [him], kneeling on [him]." (Rost Dep. at p. 95, PgID 177.)

Applying the *Graham* factors, Officer Heaney initially approached Rost for trespass on HCMA property (by mowing the grass), which is not a severe crime. *See Solomon v. Auburn Hills Police Dep't.*, 389 F.3d 167, 174 (6th Cir. 2004) (explaining that the crime at issue, trespass, "was a minor offense and certainly not a severe crime"). The second and third *Graham* factors address whether Rost posed an immediate threat to Officer Heaney or others and whether he attempted to resist or flee or evade arrest. *Graham*, 490 U.S. at 396. The parties agree that when Officer Heaney first confronted Rost and told him that he was destroying park property, Rost was sitting on his mower, two feet directly in front of Heaney, and that he kept the lawnmower running, although Rost stated that he had disengaged the blades and took the mower out of gear. (Rost Dep. at pp. 78-79, PgID 173.) Rost also agrees that Officer Heaney did not hit, kick or stomp on him once he was on the ground, and that his handcuffs were eventually loosened after he was transported to the park property following his arrest. (*Id.* at pp. 87-90, 97, PgID 175-76, 178.) However, the

parties dispute whether Rost was initially argumentative and hostile to Officer Heaney, with Rost claiming that he was cooperative with Officer Heaney and that the officer "sneak attacked" him, and also dispute whether Rost actively resisted arrest, with Rost claiming that he told Heaney he was "totally complying with [him]" and only could not produce his hand for handcuffing because it was trapped under his body by Officer Heaney's body weight. Accordingly, there are disputed issues of fact as to the second and third *Graham* factors.

Although the *Graham* factors are instructive, they "are not an exhaustive list, as the ultimate inquiry is 'whether the totality of the circumstances justifies a particular sort of seizure.'" *Livermore ex rel. Rohm v. Lubelan*, 476 F.3d 397, 404 (6th Cir. 2007) (quoting *St. John v. Hickey*, 411 F.3d 762, 771 (6th Cir. 2005)). Taking the facts in the light most favorable to Plaintiffs, as this Court is required to do when considering a motion for summary judgment, a jury could find that Rost did not pose an immediate threat to the safety of Officer Heaney or to others merely because he was sitting atop a running mower, and that he did not offer active resistance or attempt to flee, but instead that Officer Heaney simply leapt at Rost while the mower he was on was idling, with the blades disengaged, knocking him off the mower, breaking his glasses, that the officer was somehow beating Rost in the course of subduing him, that Rost was unable to give Heaney his hand to be

21

handcuffed only because his hand was trapped under his body by the officer's bodyweight, that Rost complained that the handcuffs were too tight and causing him pain, and that Officer Heaney dragged Rost across the street to his police car, causing Rost to stumble and fall. Thus, a jury could find that Officer Heaney's actions were not objectively reasonable in light of the facts and circumstances confronting him and that a genuine issue of fact exists with respect to whether Officer Heaney used excessive force when arresting Rost. *See Barton v. Martin*, 949 F.3d 938, 953-54 (6th Cir. 2019) (denying summary judgment to defendant on excessive force claim based on testimony that officer "threw [plaintiff] up against the counter like a linebacker," handcuffed him "as tight as he possibly could," causing pain, and "shoved" him outside and down his porch steps while handcuffed, and into a patrol car); *Richards v. Cnty. of Washtenaw*, 818 F. App'x 487 (6th Cir. 2020) (denying summary judgment to defendant on excessive force claim when plaintiff testified that "he could not comply with any commands to place his hands behind his back as his arms were pinned beneath him" and "[o]ur 'prior opinions clearly establish that it is unreasonable to use significant force on a restrained subject, even if some level of passive resistance is presented.'"); *Rudolph v. Babinec*, 939 F.3d 742, 752 (6th Cir. 2019) (finding genuine issues of material fact regarding plaintiff's complaints against defendant officers of too-tight handcuffing, pushing plaintiff against the wall

and dragging her to the police car, precluding defendant's qualified immunity challenge); *McGrew v. Duncan*, 333 F. Supp. 3d 730, 738-39 (E.D. Mich. 2018) (fact issues precluded qualified immunity defense on excessive force claim).

### 2.    Whether the right asserted was clearly established

Even if the amount of force Officer Heaney employed in this instance constitutes a violation of the Fourth Amendment, he could still be entitled to qualified immunity if Plaintiffs cannot demonstrate that the force used was clearly established unconstitutional in a "particularized" sense, *Saucier*, 533 U.S. at 202, so that "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id*. This inquiry "depends very much on the facts of each case," meaning that an "officer cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Kisela v. Hughes*, 138 S. Ct. 1148, 1153 (2018) (internal quotation marks omitted).

In the excessive force context, this issue – whether the right is clearly established – is generally easily resolved; the Sixth Circuit has held that "[t]he right to be free from excessive force during an arrest is clearly established." *Rudolph v. Babinec*, 939 F.3d 742, 752 (6th Cir. 2019) (citing *Kostrzewa v. City of Troy*, 247 F.3d 633, 641-42 (6th Cir. 2001)). Plaintiffs present testimony that Rost was not

actively resisting Officer Heaney's orders, and "th[e] [Sixth C]ircuit has []
concluded that, since at least 2009, the use of violence against a subdued and non-
resisting individual has been clearly established as excessive force, regardless of
whether the individual had been placed in handcuffs." *Brown v. Lewis*, 779 F.3d 401,
419 (6th Cir. 2015); *see also Kijowski v. City of Niles*, 372 F. App'x 595, 601 (6th
Cir. 2010) ("[T]he right to be free from physical force when one is not resisting the
police is a clearly established right.").

Thus, Defendants' Motion for Summary Judgment on Plaintiffs' Fourth
Amendment excessive force claim is denied, as genuine issues of fact exist as to
whether Officer Heaney used excessive force in arresting Rost, and Defendants have
not established that Officer Heaney is entitled to qualified immunity on this claim.

### B. Plaintiffs' Assault and Battery Claims Against Officer Heaney (Counts II and III)

"Under Michigan law an assault is 'an attempt to commit a battery or an
unlawful act which places another in reasonable apprehension of receiving an
immediate battery.'" *Grawey v. Drury*, 567 F.3d 302, 315 (6th Cir. 2009)
(quoting *People v. Nickens*, 470 Mich. 622 (2004)). A battery is defined as "'an
unintentional, unconsented and harmful or offensive touching of the person of
another, or of something closely connected with the person.'" *Id.* "[U]nder Michigan

law, an assault and battery claim against a police officer requires proof that the officer's actions 'were not justified because they were not objectively reasonable under the circumstances.'" *Bell v. Porter*, 739 F. Supp. 2d 1005, 1015 (W.D. Mich. 2010) (citation omitted).

Plaintiffs allege assault and battery claims against Officer Heaney based on the same facts that give rise to Rost's excessive force claim: Officer Heaney's rough handling of Rost when tackling him off the mower to the ground, beating him, handcuffing him too tightly, and dragging him across the street to the police vehicle (FAC, Counts II & III, PgID 1084; Pls.' Amended Resp. at p. 17, PgID 731), and Officer Heaney denies those claims and invokes the defense of governmental immunity (Defs.' Mot. at pp. 12-17, PgID 98-103).

"It is well-settled in [Michigan's] jurisprudence that a police officer may use reasonable force when making an arrest.'" *VanVorous v. Burmeister*, 262 Mich. App. 467, 480-81 (1994) (citation and internal quotation marks omitted), *overruled on other grounds in part by Odom v. Wayne Cnty.*, 482 Mich. 459 (2008). "The force reasonably necessary to make an arrest is the measure of necessary force that an ordinary prudent and intelligent person, with the knowledge and in the situation of the arresting officer, would have deemed necessary." *Id.* (citation and internal quotation marks omitted). Therefore, Rost's assault and battery claim is "analogous

25

to [his] § 1983 excessive force claim, in that [he] can only recover if [Officer Heaney's] conduct was objectively unreasonable." *Bell v. Porter*, 739 F. Supp. 2d 1005, 1015 (W.D. Mich. 2010) (citing *VanVorous*).

As the Court found above, there is a fact question as to whether Officer Heaney's actions were objectively reasonable, and therefore summary judgment on Plaintiffs' assault and battery claims is precluded, and the Court must proceed to the governmental immunity analysis under Michigan law. *See Acklin*, 93 F. Supp. 3d at 799 (finding that where officer's conduct was objectively unreasonable, the plaintiff could proceed with his assault and battery claims).

"Michigan state law imposes a subjective test for governmental immunity for intentional torts, based on the officials' state of mind, in contrast to the objective test for federal qualified immunity. Michigan governmental immunity 'protects a defendant's honest belief and good-faith conduct with the cloak of immunity while exposing to liability a defendant who acts with malicious intent.'" *Brown v. Lewis*, 779 F.3d 401, 420 (6th Cir. 2015) (quoting *Odom v. Wayne Cnty.*, 482 Mich. 459, 760 N.W.2d 217, 228 (2008)) (finding that district court improperly applied an objective reasonableness test in analyzing plaintiff's assault and battery claim). "That malicious intent is defined as 'conduct or a failure to act that was intended to harm

the plaintiff ... [or] that shows such indifference to whether harm will result as to be equal to a willingness that harm will result.'" *Id*. (quoting *Odom*, 482 Mich. at 475).

In order for Officer Heaney to be entitled to governmental immunity for an intentional tort, he must establish that he was "acting in the course of his employment and at least reasonably believed he was acting within the scope of his authority, that his actions were discretionary in nature, and that he acted in good faith." *Miller v. Sanilac Cnty.*, 606 F.3d 240, 254 (6th Cir. 2010) (citing *Odom v. Wayne Cnty.*, 482 Mich. 459 (2008), which defined good faith as "without malice."); *see also Malory v. Whiting*, 489 F. App'x 78, 86 (6th Cir. 2012) ("The question of an officer's good faith under Michigan law overlaps considerably, if not entirely, with [the] analysis of whether the officer's actions were objectively reasonable under the circumstances.").

Applying this standard, and viewing the evidence in the light most favorable to Plaintiffs, Officer Heaney was acting course of his employment and at least reasonably believed he was acting within the scope of his authority as an HCMA police officer when he interacted with Plaintiff, who was observed mowing property he admitted was not his and that Officer Heaney believed was at least contiguous to HCMA property, and the officer's actions in arresting Plaintiff were discretionary. There is a question, however, as to whether a reasonable juror could conclude that

Officer Heaney acted with malice, even with his perception of the mower as a threat and Plaintiff's acknowledgement that the property he was mowing was not his, based on Plaintiffs' allegations that the police officer "sneak attacked" him, slamming his head and body to the ground, handcuffing him too tightly (although subsequently loosening the handcuffs), picking him up from the ground by the handcuffs and then dragging him across the street to the patrol car. *See Acklin*, 93 F. Supp. 3d at 800 (reasonable jury could infer officers acted in bad faith when they used excessive force on plaintiff); *see also Smith v. Stoneburner*, 716 F.3d 926, 934 (6th Cir. 2013) ("If, as the Smiths allege, the officers banged Charles' head against a wall, refused to loosen his cuffs when asked and gratuitously shoved Donnetta, a reasonable jury could find that they acted maliciously."). Accordingly, Defendants are not entitled to governmental tort immunity on these claims and Defendants' motion for summary judgment on Plaintiffs' assault and battery claims is denied.

### C.    False Arrest/False Imprisonment Claim (Count IV)

It is not clear from the face of Plaintiffs' FAC (which only states a claim for "False Imprisonment," and not a claim for "false arrest") whether this claim is brought under § 1983 or Michigan state law. (See FAC, Count IV, ¶¶ 50-51, PgID 1085). Both state and constitutional claims of false arrest and/or imprisonment require the plaintiff to show that there was not probable cause for his arrest. *See,*

*e.g., Stemler v. City of Florence*, 126 F.3d 856, 871 (6th Cir. 1997) (false arrest claim under § 1983); *Hansel v. Bisard*, 30 F. Supp. 2d 981, 985 (E.D. Mich. 1998) (malicious prosecution, false arrest and false imprisonment claims under § 1983); *Walsh v. Taylor*, 263 Mich. App. 618, 626 (2004) (to prevail on a false-arrest claim under Michigan law the plaintiff must show that defendants "participated in an illegal and unjustified arrest, and that [the defendants] lacked probable cause to do so"). Thus, if probable cause for Plaintiff's arrest existed, this claim is precluded. *Hansel*, 30 F. Supp. 2d at 986.

To determine whether an officer had probable cause to make an arrest, the Court examines "whether at that moment [the arrest was made] the facts and circumstances within [the officer's] knowledge and of which [the officer] had reasonable trustworthy information were sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing an offense." *Donovan v. Thames,* 105 F.3d 291, 298 (6th Cir. 1997) (quoting *Beck v. Ohio,* 379 U.S. 89, 91 (1964)) (quotation marks and citations omitted). The existence of probable cause is a question of fact and whether probable cause exists is determined by the totality of the circumstances, *Gregory v. City of Louisville*, 444 F.3d 725, 743 (6th Cir. 2006), with probable cause being 'assessed 'from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'" *Klein v. Long*,

29

275 F.3d 544, 550 (6th Cir. 2001) (citation omitted). A police officer has probable cause if there is a "fair probability" that the individual to be arrested has either committed or intends to commit a crime. *Northrop v. Trippett*, 265 F.3d 372, 379 (6th Cir. 2001) (citation omitted); *United States v. Strickland*, 144 F.3d 412, 416 (6th Cir. 1998) (noting that the probable cause standard requires "more than mere suspicion" but not "evidence to establish a prima facie case … much less evidence sufficient to establish guilt beyond a reasonable doubt."). Under Michigan law, a police officer, without a warrant, may arrest a person where "[a] felony, misdemeanor, or ordinance violation is committed … in the officer's presence." Mich. Comp. Laws § 764.15(a). A valid arrest based upon a then-existing probable cause is not vitiated if the suspect is later acquitted or the charges are dismissed. *Criss*, 867 F.2d at 262; *Bowen v Phalen*, 91 F. App'x 477, 479 (6th Cir. 2004) (affirming summary judgment and finding probable cause existed to arrest plaintiff for trespassing, even though charge was subsequently dismissed). In other words, probable cause does not depend on whether charges are brought or later successfully proven; rather, the question is whether the officers "were justified in their belief that plaintiff had probably committed or was committing a crime." *Criss*, 867 F.2d at 262. An officer "is entitled to qualified immunity if he or she could reasonably (even if erroneously) have believed that the arrest was lawful, in light of clearly established

30

law and the information possessed at the time by the arresting agent." *Everson v. Leis*, 556 F.3d 484, 499 (6th Cir. 2009) (citations omitted) "The Constitution does not guarantee that only the guilty will be arrested." *Baker v. McCollan*, 443 U.S. 137, 145 (1979.) "[E]ven if a factual dispute exists about the objective reasonableness of the officer's actions, a court should grant the officer qualified immunity [on a false arrest claim] if, viewing the facts favorably to the plaintiff, an officer reasonably could have believed that the arrest was lawful." *Kennedy v. City of Villa Hills, Ky.*, 635 F.3d 210, 214 (6th Cir. 2011).

The Court, on review of the record evidence and applying the requisite standard, finds that Plaintiffs have failed to present evidence on which a jury could find in their favor on this claim and that Rost's arrest by Officer Heaney was supported by probable cause on the facts known to him prior to the arrest. It is undisputed that the property Rost was mowing was not his, that Officer Heaney reasonably believed it was HCMA property, or contiguous thereto, that Rost did not have permission to mow that property when confronted by Officer Heaney, and that Officer Heaney and Rost were subsequently involved in a physical altercation, resulting in Rost's arrest for resisting/obstructing a police officer and disorderly conduct, among other charges. Under these circumstances, Officer Heaney had sufficient evidence to believe that Rost may have committed the crime of trespass

31

when he arrested him. That the charges against Rost were subsequently dismissed does not change this. *See Criss*, 867 F.2d at 262; *see also Howse v. Hodous*, 953 F.3d 402, 409 (6th Cir. 2020) ("[T]he constitutional tort claim of false arrest fails so long as there's just one valid reason for the arrest" and "the reason the officer gives for an arrest need not be the reason which *actually* provides probable cause for the arrest.") (emphasis in original, citations omitted); *Amis v. Twarkesky*, 637 F. App'x 859, 860 (6th Cir. 2015) ("The officer can lawfully arrest the plaintiff so long as there is probable cause to arrest her for some crime, even if the crime for which there is probable cause is different from the stated crime of arrest."); *Lang v. City of Kalamazoo*, 744 F. App'x 282, 291 (6th Cir. 2018) (dismissing Michigan state law false arrest and false imprisonment claims for same reason as federal claims, because no reasonable jury could conclude that the officers lacked probable cause to arrest). Because undisputed facts known to Officer Heaney justified a reasonable belief that Rost committed trespass, and in the Court's view no juror could rationally conclude otherwise, Defendants are entitled to summary judgment on the false arrest/false imprisonment claim.

### D. Plaintiffs' *Monell* and Respondeat Superior Claims Against the HCMA (Counts V and VI)

Plaintiffs allege in Count V of their FAC that Defendant HCMA developed and maintained policies or customs exhibiting deliberate indifference to persons'

constitutional rights and failed to exercise reasonable care and caution in hiring and supervising its police officers. (FAC, Count V, ¶¶ 52-58, PgID 681-82.) Plaintiffs allege in Count VI, Respondeat Superior, that the HCMA is liable for the actions of Officer Heaney committed against Plaintiffs while acting in the scope of his employment. (*Id.* Count VI, ¶¶ 59-60, PgID 682.)

### 1. Plaintiffs' *Monell* claim fails

First, under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), a municipality may be held liable for the deprivation of a plaintiff's constitutional rights only where the deprivation results from an official custom or policy of the municipality. *Monell*, 436 U.S. at 695; *see also Miller v. Sanilac Cnty.*, 606 F.3d 240, 254-55 (6th Cir. 2010) (plaintiff must show that his constitutional rights were violated and that a policy or custom of the county was the "moving force" behind the deprivation of his rights). Pursuant to *Monell* and its progeny, municipal liability attaches only "when execution of [the] government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury," *Monell*, 436 U.S. at 694, and there is an "affirmative link between the policy and the particular constitutional violation alleged." *Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985). "There are four methods of showing the municipality had such a policy or custom: the plaintiff may

33

prove '(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations.'" *Jackson v. City of Cleveland*, 925 F.3d 793, 828 (6th Cir. 2019) (quoting *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013)).

If seeking to hold a municipality liable on a failure to train theory, the plaintiff must prove that: (1) the training or supervision was inadequate for the tasks the officer or employee was performing; (2) the inadequate training resulted from the defendant's deliberate indifference; and (3) the inadequacy caused the injury. *Ellis v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700 (6th Cir. 2006). "To establish deliberate indifference, the plaintiff must show prior instances of unconstitutional conduct demonstrating that the County has ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury." *Miller v. Sanilac Cnty.*, 606 F.3d 240, 255 (6th Cir. 2010) (quotation marks and citations omitted). *See also Burgess*, 735 F.3d at 478-79 (finding that plaintiff failed to demonstrate the existence of prior instances of similar misconduct demonstrating that the defendant was on notice that its training and supervision in the particular area being challenged was deficient); *Savoie v. Martin*, 673 F.3d 488,

495 (6th Cir. 2012) ("'To establish deliberate indifference, the plaintiff must show prior instances of unconstitutional conduct demonstrating that the [employer] has ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury.'") (quoting *Miller*, *supra*) (alteration in original); *Hearon v. City of Ferndale*, No. 11-14481, 2013 WL 823233, at *16 (E.D. Mich. Mar. 6, 2013) (finding that plaintiff failed to establish deliberate indifference where there was no evidence of prior instances of unconstitutional conduct demonstrating that the City had "ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury"). Where failure to train and supervise claims are not couched as part of a pattern of unconstitutional practices, "a municipality may be held liable only where there is essentially a complete failure to train the police force, or training that is so reckless or grossly negligent that future police misconduct is almost inevitable or would properly be characterized as substantially certain to result." *Hays v. Jefferson Cnty.*, 668 F.2d 869, 874 (6th Cir. 1982) (internal citations omitted).

In both the FAC and Plaintiffs' Amended Response to Defendants' motion, Plaintiffs provide only general conclusory assertions that policies or customs existed. (FAC, ¶¶ 53-55, PgID 1085; Pls.' Amended Resp. at pp. 16-17, PgID 730-31.) Plaintiffs provide no evidence of any specific policy or custom of the HCMA

that caused an alleged violation of their constitutional rights and provide no evidence of a pattern of instances of excessive force of which the HCMA was made aware but ignored. Nor have Plaintiffs established a complete failure to train the entire HCMA police force on the subject of excessive force. Officer Heaney testified that he receives use-of-force training annually (Heaney Dep. at p. 107, PgID 135), and Plaintiffs offer no evidence to rebut that factual assertion.

Accordingly, Plaintiffs have failed to provide sufficient factual evidence to support their *Monell* claims against the HCMA, and Defendants are entitled to summary judgment on that claim.

### 2.     Plaintiffs' respondeat superior claim fails

Plaintiffs assert a claim against the HCMA for respondeat superior, seeking to hold the HCMA liable for the actions of its employee, Officer Heaney. (FAC, Count VI, ¶¶ 59-60, PgID 1086.) However, it is well-settled that a municipality cannot be held liable under § 1983 for the conduct of its employees or agents under the theory of respondeat superior. *Smith v. City of Troy, Ohio*, 874 F.3d 938, 946 (6th Cir. 2017). Accordingly, Defendants are entitled to summary judgment on Plaintiffs' respondeat superior claim against the HCMA.

### E.    Plaintiff Kelly Rost's Loss of Consortium Claim (Count VII)

Plaintiff Kelly Rost, the wife of Plaintiff LeMoyne Rost, asserts a claim for loss of consortium in Count VII of the FAC. (FAC, Count VII, ¶¶ 61-63, PgID 1086.) She claims that she has "suffered from loss of society and consortium as a result of the injuries to her husband directly caused by" Defendant Heaney, and that Heaney was "acting under the color of law and under color of authority granted to [him] by the [HCMA] as police officers, employees, agents or servants of the Defendant [HCMA]." (*Id.* ¶¶ 62-63, PgID 1086.)

Defendants argue in their motion that Plaintiffs' loss of consortium claim fails because "a 42 U.S.C. § 1983 claim is 'entirely personal to the direct victim of the alleged constitutional tort [and] [a]s such, no cause of action may lie under the statute for 'emotional distress, for loss of a loved one, or any other consequent collateral injuries allegedly suffered personally by the victim's family members.'" (Defs.' Mot. at p. 10, PgID 96, citing *Claybrook v. Birchwell*, 199 F.3d 350, 356-57 (6th Cir. 2000).) Courts have held that a plaintiff cannot maintain an independent loss of consortium claim under § 1983, and thus such a claim should be dismissed. *See Claybrook*, 199 F.3d at 357 ("[O]nly the purported victim, or his estate's representative(s), may prosecute a section 1983 claim; conversely, no cause of action

may lie under section 1983 for emotional distress, loss of a loved one, or any other consequent collateral injuries allegedly suffered personally by the victim's family members."); *Boyer v. Lacy*, 665 F. App'x 476, 485 (6th Cir. 2016) (Stranch, J., dissenting) (explaining that the Court has foreclosed an independent federal claim for loss of consortium under § 1983) (citing *Claybrook*, 199 F.3d 350).

However, "Michigan law clearly recognizes the right of a person to recover damages for loss of consortium caused by injuries wrongfully inflicted upon that person's spouse." *Ledsinger v. Burmeister*, 114 Mich. App. 12, 26 (1982). Under Michigan law, a claim for loss of consortium is an independent cause of action under the common law which "is derivative and recovery is contingent upon the injured spouse's recovery of damages for the injury." *Berryman v. K Mart Corp.*, 193 Mich. App. 88, 94 (1992) (citation omitted); *see also Cebulski v. City of Belleville*, 156 Mich. App. 190, 192-93 (1986) (characterizing wife's loss of consortium claim as derivative of the husband's § 1983 claim). "[Un]der § 1983, precedent shows that a state-law claim for loss of consortium may be brought alongside a substantive § 1983 claim, pursuant to the pendent jurisdiction provided by 28 U.S.C. § 1367." *Nationwide Recovery, Inc. v. City of Detroit*, No. 17-cv-12378, 2018 WL 3997850, at *4-5 (E.D. Mich. Aug. 21, 2018) (citing *Boyer*, 665 F. App'x at 484); *see also Bartlett v. Washington*, 793 F. App'x 403, 408-09 (6th Cir. 2019) (declining to

exercise supplemental jurisdiction over pendent state law claim for loss of consortium under Michigan law because federal § 1983 claims were dismissed); *Morgan v. Wallin*, No. 1:09-cv-646, 2011 WL 2745945, at *9 (W.D. Mich. Mar. 2, 2011) (recognizing that wife's loss of consortium claim is derivative of her husband's § 1983 claim).

Plaintiffs' First Amended Complaint does not state whether the loss of consortium claim is pleaded under § 1983 or under Michigan law, although it does allege that Officer Heaney was acting "under the color of law and under color of authority" of the HCMA. (FAC ¶¶ 61-63, PgID 1086.) The Court agrees that to the extent Plaintiffs assert the loss of consortium claim under § 1983, that claim fails and is dismissed. *See Claybrook*, 199 F.3d 500.

In order for Plaintiff Kelly Rost's claim to survive, it must arise under state law. In Plaintiffs' response brief, they only cite to a Michigan case and a Michigan jury instruction in support of this claim. (Pls.' Amended Resp. at pp. 14-15, PgID 728-29.) To the extent Plaintiffs assert their loss of consortium claim under Michigan law, it survives summary judgment to the extent Plaintiff LeMoyne Rost's claims survive "because, under Michigan law, a loss-of-consortium claim is derivative or and 'stands or falls' with the underlying claim." *Nationwide Recovery*, 2018 WL 3997850, at *5 (citations omitted). Accordingly, as Plaintiffs' Fourth

Amended excessive force claim and state law assault and battery claims survive summary judgment, Plaintiff Kelly Rost's derivative state law loss of consortium claim also survives, and Defendants' motion for summary judgment on this claim is denied at this time.

## IV.   CONCLUSION

Accordingly, for the reasons set forth above, Defendants' Motion for Summary Judgment is **GRANTED** as to Plaintiffs' False Imprisonment/False Arrest Claim against Defendant Heaney (Count IV) and Plaintiffs' *Monell* and Respondeat Superior claims against the HCMA (Counts V and VI), and these claims are dismissed with prejudice.

However, Defendants' Motion for Summary Judgment is **DENIED** as to Plaintiffs' Fourth Amendment Excessive Force Claim (Count I), state law Assault and Battery Claims (Counts II and III), and state law Loss of Consortium Claim (Count VII) against Defendant Heaney.

A pre-trial scheduling order will issue. If the parties wish to again facilitate in light of this Opinion, the Court will accommodate them in its pre-trial scheduling order. The parties must let the Court know within two weeks from the date of this Opinion and Order if they wish to facilitate.

The Court finds that if the case proceeds to trial, the interests of judicial economy and convenience would be served by bifurcation of the liability and damages phrases of the trial and hereby ORDERS such bifurcation. The first phase of the trial will determine whether Defendants are liable to Plaintiffs. If the jury finds liability, the same jury in the second phase of the trial will determine appropriate damages.

IT IS SO ORDERED.

s/Paul D. Borman

Dated: October 20, 2020          Paul D. Borman
                                 United States District Judge